UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-60616-Civ-COHN
MAGISTRATE JUDGE P. A. WHITE

JOSEPH STEFFEN,                    :

      Petitioner,              :

v.                                 :        <u>REPORT OF</u>
                                            <u>MAGISTRATE JUDGE</u>
JAMES McDONOUGH,                   :

      Respondent.            :
_____

    Joseph Steffen, a state prisoner confined at Okaloosa Correctional Institution, has filed a <u>pro se</u> petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254, challenging the constitutionality of his convictions of armed burglary and grand theft entered on a jury verdict in Broward County Circuit Court case number 02-17536 CF 10A.

    This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

    For its consideration of this petition the Court has the supplemental response of the state to an order to show cause with multiple exhibits [DE 14, 20] and the petitioner's reply with a supporting appendix. [DE 22-23][1]

_____

    [1]After the state filed an initial response to the order to show cause [DE 13], confusion arose as to whether all of the petitioner's claims had been addressed [DE 15, 17, 20 at pp.1-2], and the respondent filed a supplemental response re-addressing the petition as a whole. [DE 20] Therefore, the respondent's supplemental response [DE 20] should be read as superceding the

Steffen makes the following claims:

1.  He was denied effective assistance of counsel when no motion to suppress was filed as to evidence seized from his home without a warrant and the confession he gave after receiving insufficient <u>Miranda</u> warnings.

2.  He was denied effective assistance of counsel when no claim of a <u>Brady</u> violation was made concerning a consent to search form allegedly signed by his girlfriend.

3.  He was denied effective assistance of counsel when his attorney failed to challenge the state's position that he had no expectation of privacy in the bedroom where the evidence was found.

4.  He was denied effective assistance of counsel when his attorney did not object to the introduction of <u>Williams</u> rule evidence.

5.  He was denied effective assistance of counsel when his attorney failed to move to suppress the results of a suggestive photo line-up.

6.  He was denied effective assistance of counsel when his attorney failed to challenge the inconsistent and perjured testimony of a prosecution witness.

7.  He was denied effective assistance of counsel when his lawyer failed to challenge the charging document as vague and ambiguous, or to object to the introduction of evidence that was not listed in the charging document.

8.  He was denied effective assistance of

_____

initial response.

2

counsel when his attorney failed to object to improper and misleading jury instructions.

9.    He was denied effective assistance of counsel due to the cumulative effect of counsel's deficient performance.

10.   He was denied his rights to due process and a fair trial when the state was allowed to introduce irrelevant and prejudicial <u>Williams</u> rule evidence which became a feature of the trial.

11.   He was denied his rights to due process and a fair trial because the evidence was insufficient to support his conviction of grand theft.

On June 19, 2002, Steffen was charged by amended information with the armed burglaries of vessels belonging to Wilbur Brown (Count I) and Gary Lorenz (Count II), and the grand theft of various items including guns and fishing equipment from both victims (Counts III-IV). [DE 14, Ex.1] He was tried to jury and convicted as charged on all counts, and on September 5, 2003, Steffen was sentenced as a violent career criminal to serve concurrent terms of 15 years in prison with minimum mandatory terms of 10 years for the burglaries, and as an habitual felony offender to terms of 10 years for the two grand thefts, to run concurrent with each other but consecutive to a sentence imposed in a separate state case. [DE 14, Ex.4]

Steffen prosecuted a direct appeal, raising claims 10 and 11 of this federal petition, as listed above. [DE 14, Ex.5] On February 25, 2004, his convictions and sentence were affirmed without written opinion. <u>Steffen v. State</u>, 892 So.2d 1050 (Fla. 4 DCA 2004)(table). [DE 14, Ex.7] For federal purposes, Steffen's conviction became final ninety days thereafter, or on or about May

26, 2004. <u>Griffith v. Kentucky</u>, 479 U.S. 314 (1986); <u>Bond v. Moore</u>, 309 F.3d 770 (11 Cir. 2002).

On January 24, 2006, Steffen submitted a motion for postconviction relief pursuant to <u>Fla.R.Cr.P</u>. 3.850, raising in pertinent part the remaining claims of this federal petition. [DE 14, Ex.11] Following a response from the state [DE 14, Ex.12], the collateral trial court denied relief for the reasons expressed in the state's response [DE 14, Ex.13], and that result subsequently was affirmed without comment, <u>Steffen v. State</u>, 950 So.2d 1253 (Fla. 4 DCA 2007)(table), with the mandate issuing on April 27, 2007. [DE 14, Ex.15, 17] Meanwhile, this federal proceeding ensued on April 24, 2007.[2]

The respondent acknowledges correctly that this petition was filed within the one-year limitations provision of 28 U.S.C. §2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996. <u>Artuz v. Bennett</u>, 531 U.S. 4 (2000) (pendency of properly-filed state postconviction proceedings tolls the AEDPA limitations period). In addition, the respondent rightfully does not challenge the petitioner's claims on the basis of the exhaustion requirement. <u>Anderson v. Harless</u>, 459 U.S. 4 (1982)(issues raised in a federal habeas corpus petition must have been fairly presented to the state courts and thereby exhausted).

Section 104(d) of the AEDPA [28 U.S.C. §2254(d)] sets out a significant new restriction upon the ability of federal courts to

---

[2]The Eleventh Circuit recognizes the "mailbox" rule in connection with the filing of a prisoner's petition for writ of habeas corpus. <u>Vanderberg v. Donaldson</u>, 259 F.3d 1321 (11 Cir. 2001); <u>Adams v. U.S.</u>, 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing). [DE 1 at 7]

grant habeas corpus relief. It provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the claim --

>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In Williams v. Taylor, 529 U.S. 362 (1999), the Supreme Court interpreted this provision as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"Clearly established federal law" refers to the holdings of the United States Supreme Court as of the time of the relevant state court decision. Putnam v. Head, 268 F.3d 1223, 1241 (11 Cir. 2001). A state court's decision is "contrary to" clearly

established federal law if the state court 1) applied a rule that contradicts United States Supreme Court case law, or 2) arrived at a result different from that reached in a United States Supreme Court decision when faced with materially indistinguishable facts. Id.; see also, Fugate v. Head, 261 F.3d 1206, 1215-16 (11 Cir. 2001). A state court arrives at an "unreasonable application" of clearly established federal law if it 1) unreasonably applies a correct legal principle for Supreme Court case law to the facts of a petitioner's case, or 2) unreasonably extends or declines to extend a legal principle from Supreme Court case law to a new situation. Id. In this context, an "unreasonable application" is an "objectively unreasonable" application. Williams v. Taylor, supra at 409.

The Eleventh Circuit has stressed the importance of this new standard, stating that the AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." Crawford v. Head, 311 F.3d 1288, 1295 (11 Cir. 2002). Specifically, the AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." Crawford, supra at 1295, quoting Bell v. Cone, 535 U.S. 685 (2002).

Before addressing Steffen's claims for federal relief, a brief review of the facts of his case is in order. In August, 2002, Wilbur Brown awoke early to go fishing. However, when he went to check on his boat that was docked behind his Lighthouse Point home, he discovered that the door was open, and when he went inside the boat he realized that someone had been on it during the night and called the police. [T. 296-97] When the police arrived they went

6

through the boat, and Mr. Brown found that a 9-millimeter gun, ten custom-made fishing rods with reels, and six "inexpensive" spinning rods were missing. [T.291]

Brown also suggested to the police that they check the boat of his neighbor, Gary Lorenz, because that boat's door was also standing open. [T.296] When Lorenz investigated the interior of his boat, he saw that a drawer containing his wife's swimsuits and other articles of clothing had been emptied, and various other items were missing, including a box of shotgun shells, some fishing sunglasses, a 12-gauge shotgun, a handheld GPS device, and three fishing rods and reels. [T.325-28]

At trial, a fingerprint examiner testified that Steffen's fingerprints were found on a door handle and a stereo cabinet in the interior of Lorenz's boat, and on a cabinet containing keys on Brown's vessel. [T.438-39]

Over repeated defense objections, the testimony of a neighbor of Brown and Lorenz named Charles Barrett was introduced at trial. Barrett woke up at about 4:00 a.m. about a month after the foregoing incident to what sounded like the door from his garage into his house being opened. [T.352-53] Barrett went into the kitchen and saw someone standing with the refrigerator door open examining his wine rack. [T.353] Barrett chased the man out of his house and watched him drive away in a gold Suburban SUV. [T.356] When Barrett checked his boat, he discovered that some fishing rods and an underwater camera had been taken. [T.358-59] Barrett identified a photograph of Steffen as the person he saw inside his house. [T.363]

That same morning, an officer of the Delray Beach Police Department noticed a silver Yukon parked outside an apartment building with ten or twelve fishing rods inside. [T.404] When the

officer checked the vehicle's tag, he discovered it had been reported stolen. [T.405] Steffen, who lived at the apartment building, voluntarily accompanied the officer to the police station but later was released. [T.407]

Later that same day, two detectives from the Delray Beach Police Department and three from Lighthouse Point went to Steffen's apartment. When no one answered their knock they telephoned Steffen's girlfriend at her workplace, and when she arrived she gave the officers permission to enter. [T.412-18] The police found Steffen in a bedroom sitting on the bed and smoking a cigarette. [T.415] Also discovered in the bedroom were an underwater camera and a box of shotgun shells. [T.416, 424]

Turning now to consideration of Steffen's federal claims, he argues in most that he received ineffective assistance of trial counsel for various reasons. To prevail on a claim of ineffective assistance, a petitioner must demonstrate both that his attorney's efforts fell below constitutional standards, and that he suffered prejudice as a result. Strickland v. Washington, 466 U.S. 668 (1984). A claim of ineffective assistance of counsel fails unless both prongs of the Strickland analysis are satisfied. Waters v. Thomas, 46 F.3d 1506, 1510 (11 Cir. 1995). Review of counsel's conduct is to be highly deferential, Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11 Cir. 1992). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Rogers v. Zant, 13 F.2d 384, 386 (11

Cir. 1994).

In his first claim, Steffen argues that he was denied effective assistance of counsel when no motion to suppress was filed as to evidence seized from his home without a warrant and the confession he gave after receiving insufficient Miranda warnings. This contention is based on a misunderstanding of the record. Prior to trial, counsel in fact did file a motion to suppress physical evidence and statements, in which he argued both that the evidence seized from Steffen's girlfriend's apartment should be suppressed because the police did not have a warrant or Steffen's consent to enter the premises, and that statements made by Steffen including any confession should be suppressed because no Miranda rights waiver form was executed before the police questioned him, he was under the influence at the time, and the statement was not tape-recorded. [DE 14, Ex.2 at R.21-23]

On August 22, 2003, a hearing was held *inter alia* on the defense motion to suppress. [DE 14, Ex.12, Attachment B] At the hearing, defense counsel clarified that "the police claim there was a confession made on the first case [concerning the Barrett burglary], the September 22nd case. There is no context in this case. So we're only dealing with physical evidence." [Id. at 23] When the trial convened three days later, the court at the outset of the proceedings denied the motion to suppress, finding that Steffen had no standing to make such a motion because he had stayed at the apartment only two or three days, and because his girlfriend gave the police her consent to enter and search the premises. [T.3-4] As defense counsel had conceded at the suppression hearing, no statement made by Steffen was introduced into evidence during the course of the trial. [T.269-449]

Under these circumstances, where counsel in fact did move to suppress Steffen's statements prior to trial, and where no statements made by Steffen were introduced into evidence, neither prong of the <u>Strickland</u> analysis is satisfied by Steffen's first claim. Accordingly, its denial by the state collateral courts was in accord with that applicable federal authority, and the same result should pertain here. <u>Williams v. Taylor</u>, <u>supra</u>.

In his second claim, Steffen asserts that his attorney rendered ineffective assistance of counsel by failing to argue that a <u>Brady</u> violation occurred with respect to the consent to search from signed by Steffen's girlfriend, Claudia Rapetto. At the pretrial suppression hearing, the court engaged the prosecutor in the following exchange:

> THE COURT: Can I ask you two questions, Mr. Grisz? Just for curiosity, what is the status of the actual search warrant and the waiver or consent to search?
>
> PROSECUTOR: There was no search warrant and the consent to search form was never produced. One agency says I thought I left it with that agency, you had Lighthouse Pointe detectives going up and being assisted by Delray Beach Police Department detectives, each agency kind of points their finger at the other and says I thought I left it with them, I thought I left it with them.
>
> THE COURT: So you still don't have it?
>
> PROSECUTOR: I don't have it.

[DE 14, Ex.12, Attachment B at 26-27]

In <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the Supreme Court established three criteria a criminal defendant must prove in order

to establish a violation of due process resulting from the prosecution's withholding of evidence. Specifically, the defendant alleging a <u>Brady</u> violation must demonstrate that (1) the prosecution suppressed evidence, (2) the evidence suppressed was favorable to the defendant or exculpatory, and (3) the evidence suppressed was material. <u>United States v. Severdija</u>, 790 F.2d 1556, 1558 (11 Cir. 1986). Here, it is apparent that the prosecution did not suppress the missing consent form, and since therefore no <u>Brady</u> violation occurred, any attempt to argue otherwise by defense counsel would have been futile. Accordingly, the state collateral courts' determination that no ineffective assistance of counsel on that basis was demonstrated was in accord with applicable federal principles, <u>cf</u>. <u>Strickland</u>, <u>supra</u>, and that result should not be disturbed here. <u>Williams v. Taylor</u>, <u>supra</u>.

In claim three, Steffen charges his attorney with providing ineffective assistance by failing to challenge the state's position that Steffen had no expectation of privacy in the bedroom where the evidence was found. Specifically, he argues that counsel failed to litigate the motion to suppress properly, because his girlfriend Claudia Rapetto and Detectives Nestor and Tavares should have been called as witnesses at the hearing.

The record reflects that at the suppression hearing in this case [DE 14, Ex.12, Attachment B], the court took judicial notice of the suppression hearing that had been held in case number 02-17494, which stemmed in part from the burglaries of Charles Barrett's home and boat. [DE 14, Ex.12, Attachment D] At that earlier proceeding before the Honorable James I. Cohn, Detective Keating testified that a capias had been issued for Steffen, and a stolen vehicle containing some of the items taken from the burglarized boats was found parked close to the apartment where he

11

was staying. He and three Lighthouse Point officers waited for Ms. Rapetto to come home from work, and when she did she opened the door and allowed the officers to enter the apartment. She located Steffen in the bedroom and she allowed the officers to go in to speak to him; Steffen was arrested when the bedroom was found to contain items from the burglaries that were the subjects of both case number 02-17494 and the case at bar. [Id. at 214-28] Ms. Rapetto signed the written consent to search form which could not be located, as discussed in claim two above, and she informed the officers that she was listed on the lease for the apartment but Steffen was not. [Id. at 228-34]

Steffen testified at the suppression hearing in case number 02-17494 that the apartment belonged to Ms. Rapetto's employer, and that neither her name or his own appeared on the lease. He further stated that he paid no rent for the apartment, and he received his mail elsewhere. [Id. at 251-61] At the conclusion of the hearing in case number 02-17494, Judge Cohn found that the search of the apartment was valid, both because Claudia Rapetto consented to it, and because it was incident to a lawful arrest in the light of the capias. [Id. at 261-65]

In this case, following the arguments of counsel, the court also denied the motion to suppress, finding that Steffen lacked standing to contest the search, but that even were that not so, the search was valid due to Ms. Rapetto's consent. [DE 14, Ex.12, Attachment E at 3-4]

Under these circumstances, Steffen has failed to show how different performance by counsel with respect to the suppression hearing could have changed the outcome of that proceeding. Steffen's own testimony at the earlier hearing in case number 02-

17494 demonstrated that he had no standing to contest the search of the apartment. Moreover, depositions were taken of both Detective Nestor and Detective Tavares, and since both confirmed that Claudia Rapetto consented to both their entry into and their search of the apartment [DE 14, Ex.12, Attachment F], the fact that they were not called as witnesses at the suppression hearing was not detrimental to Steffen's position. Since no prejudice inured to Steffen as the result of his representation at the suppression hearing in this case, ineffective assistance by counsel at that proceeding has not been demonstrated, cf. Strickland, supra, and claim three of this petition warrants no federal relief.

In his fourth claim, Steffen asserts that he received ineffective assistance of counsel when his attorney did not object to the introduction of Williams rule evidence in the form of the testimony of Charles Barrett, the neighbor of the victims in this case. This contention again is based on a simple misunderstanding of the record, because Steffen's attorney in fact did move in limine to exclude Barrett's testimony, and when that motion was denied he also preserved the objection at trial. [T.101-10, 349-50] Clearly, then, counsel took appropriate measures with respect to Barrett's testimony, and the fact that his efforts were unsuccessful does not indicate that his efforts amounted to ineffective assistance. Cf. Strickland, supra.[3]

In his fifth claim, Steffen contends that counsel rendered ineffective assistance by failing to move to suppress the results of a suggestive photo line-up that was shown to Charles Barrett, the collateral crime evidence witness. According to Steffen, counsel should have challenged the results of the line-up because

_____

[3]The propriety of the court's decision to admit the collateral crime testimony of Mr. Barrett is the subject of claim ten infra.

Steffen was smiling in his photograph while the other participants looked "grim," and because his photo was taken from his driver's license while the others were mug shots. [DE 14, Ex.11, Sub-Ex.A]

Both Florida and federal courts employ the same standard to determine if an out-of-court identification should be excluded: 1) did the police employ an unnecessarily suggestive procedure in obtaining it; and 2) if so, considering all the circumstances, was a likelihood of irreparable misidentification thereby created. Manson v. Braithwaite, 432 U.S. 98 (1977); Neil v. Biggers, 409 U.S. 188 (1972); Chihora v. Dugger, 840 F.2d 893 (11 Cir. 1988): Grant v. State, 390 So.2d 341, 343 (Fla.), cert.denied, 451 U.S. 913 (1981). Factors to be considered in assessing the likelihood of misidentification include the witness' opportunity to view the defendant at the time of the crime, the witness' degree of atten-tion, the level of certainty demonstrated by the witness, and the length of time between the crime and the confrontation. Grant, supra at 343.

In this case, it is clear from both his deposition and trial testimony that Charles Barrett had ample opportunity to view Steffen in his kitchen on the morning of the burglaries, such that his identification testimony was not tainted by any defect in the photo line-up. [DE 14, Ex.12, Attachment C at 353-55, 366; Attachment G at 8-11] Moreover, as to the case at issue in this federal proceeding, Barrett was a witness only as to a collateral crime, and his testimony was admitted as similar fact evidence, whereas Steffen's guilt of the offenses charged here was established by the fact that his fingerprints were found on both of the burglarized boats. [DE 14, Ex.12, Attachment C at 438-39] Under these circumstances, no likelihood of irreparable misidentification was created by the photo line-up shown to Barrett, and Steffen

cannot show that he suffered prejudice when his attorney failed to move to suppress its results. Accordingly, as the state courts determined, no relief is warranted on Steffen's fifth claim. Cf. Strickland, supra.

In claim six, Steffen assails his counsel's performance on the ground that the testimony of Detective Keating should have been impeached as to the fact that Claudia Rapetto's signed consent form to search her apartment could not be found, and as to alleged inconsistencies in his statements as to the location of some of the items seized from he bedroom. Neither of these contentions has merit.

As to the missing consent form, defense counsel elicited testimony from the detective on cross-examination that he did not know the whereabouts of the form, and then used that testimony to argue to the jury in closing that such a lapse by the police called into question the veracity of their testimony. [T.417-19, 473-74, 496-98] The fact that the jury apparently was not swayed by that position in no way indicates that counsel's efforts were constitutionally deficient. Similarly, Steffen has failed to show how impeaching Detective Keating with inconsistencies regarding where various stolen items were found in the bedroom would have caused  the jury to acquit him, since it still would have heard testimony that Steffen provided the officers with information as to the location where the items he took from the boats could be found. Again, Steffen has failed to satisfy either prong of the Strickland analysis in claim six, and its rejection by the state collateral courts should be allowed to stand. Williams v. Taylor, supra.

In his seventh claim, Steffen contends that he was denied effective assistance of counsel when his lawyer failed to challenge

the information as vague and ambiguous as to the items that were stolen, or to object to the introduction of evidence that was not listed in the information. However, under Florida as well as federal law, an indictment or information is no more than a charging document intended to apprise a defendant of the charges against him in a manner which allows him to defend against them. DeBenedictis v. Wainwright, 674 F.2d 841, 842-43 (11 Cir. 1982)(charging document is adequate where it incorporates the elements of the crime being charged); United States v. Glaziou, 402 F.2d 8, 15 (2 Cir.), cert.denied, 89 S.Ct. 999 (1969)(sole purpose of indictment is to identify alleged offenses); Drozewski v. State, 84 So.2d 329 (Fla. 1955)(same). A charging document is adequate where it incorporates the elements of the crime being charged. DeBenedictis v. Wainwright, supra at 842-43. Under Florida law, an indictment or information is to be dismissed as insufficient only if it "is so vague, inconsistent and indefinite as to mislead the accused or embarrass him in the preparation of his defense or expose him after a conviction or acquittal to substantial danger of a new prosecution for the same offense." Fla.R.Cr.P. 3.140(o); Tucker v. State, 459 So.2d 306 (Fla. 1984).

In this case, the information [DE 14, Ex.1] was not unduly vague but instead was adequate to meet the foregoing criteria, so any attempt by counsel to move to dismiss it would have been unsuccessful. Moreover, the victims itemized in open court the precise items that were stolen from each of them. [T.290-92, 325-27] Under these circumstances, Steffen in his seventh claim has shown neither deficient performance nor prejudice, so no relief is warranted on his argument. Cf. Strickland, supra.

In claim eight, Steffen argues that his attorney provided ineffective assistance by failing to object to an improper and

misleading jury instruction on grand theft, which informed the jurors that they could total the values of the various items of stolen property in determining the grade of the offense. However, the instruction [T.506] to which Steffen objects is a portion of the Florida Standard Jury Instruction on theft, and Florida law holds that its standard jury instructions are presumed to be correct. <u>Elledge v. State</u>, 706 So.2d 1340 (Fla. 1997). In <u>Funchess v. Wainwright</u>, 772 F.2d 683, 691 (11 Cir.), <u>cert.denied</u>, 475 U.S. 1031 (1986), a Florida petitioner for §2254 relief argued that his lawyer rendered ineffective assistance by failing to request special instructions not recognized by inclusion in the Florida Standard Jury Instructions, but the Eleventh Circuit rejected that position, reasoning that because the Florida Supreme Court had approved the standard instruction and its interpretation of state law is not assailable in a federal habeas corpus proceeding, counsel was not ineffective for allowing the standard instruction to be given. Here, since the standard instruction given was warranted by the evidence because Steffen stole multiple items from each victim [T.290-92, 325-27], claim eight of this petition is without merit.

In his ninth claim, Steffen contends that he was denied effective assistance of counsel due to the cumulative effect of counsel's deficient performance. However, since none of Steffen's individual claims in fact amounts to ineffective assistance, their cumulative effect likewise caused him to suffer no prejudice. <u>Cf</u>. <u>Strickland</u>, <u>supra</u>; <u>see</u> <u>Moore v. Reynolds</u>, 153 F.3d 1086, 113 (10 Cir.), <u>cert.denied</u>, 526 U.S. 1025 (1999)(cumulative error analysis applies only where there are two or more actual errors; it does not apply to the cumulative effect of non-errors). Therefore, claim nine warrants no relief.

In claim ten, Steffen argues that his rights to due process and a fair trial were violated when the state was allowed to introduce irrelevant and prejudicial <u>Williams</u> rule evidence which became a feature of the trial. The evidence to which Steffen refers is the testimony of Charles Barrett, the neighbor of the victims in this case whose home and boat were also burglarized.

Federal courts will grant habeas corpus relief on the basis of a state evidentiary ruling only if the ruling adversely affects the fundamental fairness of the trial. <u>Estelle v. McGuire</u>, 502 U.S. 62 (1991); <u>Sims v. Singletary</u>, 155 F.3d 1312 (11 Cir. 1998). In order to warrant federal relief, a state evidentiary ruling must "offend ... some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." <u>Patterson v. New York</u>, 432 U.S. 197, 2020 (1977). Such rulings are subject to the harmless error analysis and will support habeas relief only if the error "had substantial and injurious effect or influence in determining the jury's verdict." <u>Id</u>., <u>quoting</u> <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993). In general, federal courts are reluctant to second-guess state evidentiary rulings, recognizing that states deserve wide latitude in that area, <u>Maness v. Wainwright</u>, 512 F.2d 88, 92 (5 Cir. 1975), so federal habeas corpus relief is rarely deemed appropriate for claims predicated on allegations of state evidentiary error. <u>Boykins v. Wainwright</u>, 737 F.2d 1539, 1543-44 (11 Cir.), <u>cert. denied</u>, 470 U.S. 1059 (1985).

In <u>Williams v. State</u>, 110 So.2d 654 (Fla.), <u>cert.denied</u>, 361 U.S. 847 (1959), the Florida Supreme Court held that evidence of similar facts which point to the commission of a separate crime is admissible if found to be relevant for any purpose except showing bad character or propensity. The holding of <u>Williams</u> is now codified at <u>Fla.Stat</u>. §90.404(2)(a), which states:

> Similar fact evidence of other crimes, wrongs or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but is inadmissible when the evidence is relevant solely to prove bad character or propensity.

In this case, Steffen's defense essentially was one of misidentification. He challenged the credibility of the fingerprint expert and hence the legitimacy of the identification of the fingerprints found on the boats as his; he suggested that the shotgun shells found in his apartment were too common to be identifiable as those that were stolen; and he pointed out that there no eyewitnesses to any of the burglaries. [DE 14, Ex.5 at 9-10] Therefore, the testimony of Charles Barrett was relevant to demonstrate Steffen's penchants for victimizing the Lighthouse Point neighborhood, as well as for burglarizing boats and stealing marine equipment. Indeed, the similarities between the offenses charged in this case and those that occurred in Barrett's case were striking: all of the burglaries occurred on the same street in the same neighborhood [T.296-97, 308-09, 349-50]; all involved items stolen from a boat [T.282-89, 310-12, 358]; all involved thefts of fishing rods and reels and other marine equipment [T. 285-89, 312-16, 360-61]; there was no forced entry in any of the burglaries [T. 296-97, 312, 353]; and all of the burglaries happened within a one-month time frame. [T.296-97] Based on these considerations, the trial court allowed Barrett to testify over defense objection as to the burglaries of his home and boat by Steffen [T.349-69], and the admission of that testimony was unsuccessfully challenged by Steffen on his direct appeal.

Federal courts, like Florida's, recognize the principle that

evidence of other crimes, wrongs, or acts is not admissible to prove bad character. <u>Britton v. Rogers</u>, 631 F.2d 572 (8 Cir.), <u>cert</u>. <u>denied</u>, 451 U.S. 939 (1981). However, "other crimes" evidence may be admitted when offered for appropriate purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, or identity. <u>Hall v. Wainwright</u>, 733 F.2d 766 (11 Cir. 1984); <u>Britton v. Rogers</u>, <u>supra</u> at 575. Here, the admission of collateral crimes evidence was allowed for appropriate purposes and did not abrogate the fundamental fairness of Steffen's trial, <u>Estelle v. McGuire</u>, <u>supra</u>, so the state courts' rejection of his tenth claim was in accord with applicable federal principles and should not be disturbed here. <u>Williams v. Taylor</u>, <u>supra</u>.

In claim eleven, Steffen asserts that he was denied his rights to due process and a fair trial because the evidence was insufficient to support his conviction of grand theft. Specifically, Steffen argues as he did on direct appeal that the testimony regarding the value of the rods and reels that were taken from the boats was hearsay and was inadequate to establish the fair market value of the equipment, such that his conviction of grand theft cannot stand. [DE 1 at 7U-7V]

Florida and federal courts employ the same test for the sufficiency of the evidence: that is, whether a "rational trier of fact could have found proof of guilt beyond a reasonable doubt." <u>Melendez v. State</u>, 498 So.2d 1258, 1261 (Fla. 1986)(citing <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979)).

Under Florida law, absent proof that the value of stolen items was $300 or more, a defendant's conviction for grand theft cannot stand. <u>Randolph v. State</u>, 608 So.2d 573, 574 (Fla. 5 DCA 1992). Value is defined as "the market value of the property at the time

and place of the offense or, if such cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the offense." <u>Fla.Stat</u>. §812.012(9)(a)(1). An item's cost alone is insufficient to establish its market value at the time of its theft; rather, market value takes into consideration not just its original cost, but also the manner in which it was used, its general condition and quality, and the percentage of its depreciation. <u>Abbott v. State</u>, 543 So.2d 411 (Fla. 1 DCA 1989).

In this case, the state presented the testimony of an expert in the field of fishing [T.384] who had worked for five years for a company that manufactured custom rods and reels and repaired marine equipment. [T.370-72] He went through a list of the stolen articles and using an industry-dictated calculation of 15% reduction in each item's value due to their used condition [T.385-91], testified that the depreciated value of the stolen rods and reels alone was between $2,890 and $3,800. Patently, then, the jury heard evidence from which a rational trier of fact could conclude that Steffen was guilty of grand theft, so claim eleven of this petition is without merit.

Lastly, in his reply to the state's response [DE 23], Steffen contends that he is entitled to a federal evidentiary hearing on the claims he raises in this petition. The Eleventh Circuit holds that if a petitioner or movant for habeas corpus relief "alleges facts that, if true, would entitle him to relief, then the district court should order and evidentiary hearing and rule on the merits of the claim." <u>Holmes v. United States</u>, 876 F.2d 1545, 1552 (11 Cir. 1989), <u>quoting</u> <u>Slicker v. Wainwright</u>, 809 F.2d 768, 770 (11 Cir. 1987). Where the district court cannot state conclusively that the facts alleged by the petitioner, taken as true, would present

no ground for relief, an evidentiary hearing must be conducted. <u>United States v. Yizar</u>, 956 F.2d 230, 234 (11 Cir. 1992). However, the court is not required to hold a hearing where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous. <u>Holmes</u>, <u>supra</u> at 1553. Since Steffen's present claims are conclusively refuted by the record, as discussed in this report, there is no need to hold an evidentiary hearing in this case.

For the foregoing reasons, it is recommended that this petition for habeas corpus relief be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Dated this 19th day of October, 2007.

_____
UNITED STATES MAGISTRATE JUDGE

cc:   Joseph Steffen, <u>pro se</u>
      DC #608825
      Okaloosa Correctional Institution
      3189 Little Silver Road
      Crestview, FL 32539-6708

      Mitchell A. Egber, AAG
      Office of the Attorney General
      Department of Legal Affairs
      1515 North Flagler Drive, #900
      West Palm Beach, FL 33401